

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS C. BINDER,<br><br>                  Plaintiff,<br><br>      v.<br><br>PPL SERVICES CORP.,<br><br>                  Defendant | NO. 06-CV-2977<br><br>FILED<br>JUN 1 5 2009<br>MICHAEL E. KUNZ, Clerk<br>By_____ Dep. Clerk |

**HENRY S. PERKIN**                                                                                           June 15, 2009
**United States Magistrate Judge**

### MEMORANDUM

This matter is before the Court on Defendant's Motion to Enforce the Parties' Agreement to Settle and Discontinue Plaintiff's Civil Action Against Defendant ("Motion") filed May 19, 2009. Plaintiff's Memorandum of Law in Opposition to the Defendant's Motion to Enforce the Parties' Agreement to Settle and Discontinue the Plaintiff's Civil Action Against the Defendant ("Response") was filed May 26, 2009. On June 10, 2009, the Court held a hearing on Defendant's motion. Having reviewed and considered the contentions of the parties as well as the argument and testimony at the hearing, the Court is prepared to rule on this matter.

I.      **BACKGROUND**

On July 7, 2006, Plaintiff, Thomas C. Binder, commenced this action by filing a Complaint against Defendant PPL Services Corporation, his former employer, alleging disability discrimination and retaliation under Title I of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). On November 20, 2008, with the consent of all parties, this matter was referred to me in order to conduct all proceedings and enter final

judgment in accordance with 28 U.S.C. § 636(c) and Fed.. R. Civ. P. 73. See Document No. 33.

The parties, through their respective counsel, engaged in extensive settlement negotiations,[1] resulting in Plaintiff's counsel, Donald P. Russo, Esquire, informing the Court on February 18, 2009, that his client would accept the sum of $25,000.00 as full and final settlement of this matter. The Court then communicated this information to counsel for the Defendant. On February 27, 2009, Defendant's counsel, A. James Johnston, Esquire, informed the Court that his client agreed to settle the case by paying the sum demanded by the Plaintiff.

On March 2, 2009, Mr. Johnston received a voice message from Mr. Russo indicating that his client had "changed his mind" and was "repudiating" the settlement agreement. Defendant takes the position that the parties reached an enforceable settlement in this case and now asks the Court to enforce that settlement.

Plaintiff responds to the Defendant's motion by asserting that there was never a formal written agreement to settle the case. In his Memorandum of Law opposing the Defendant's motion to enforce a settlement, he states:

> In the case at bar, however, there is no writing. The entire argument of the defense is based on a conversation between the U.S. Magistrate Judge and the Plaintiff's counsel. As the Plaintiff's counsel has explained to the Magistrate Judge, however, his belief that he had settlement authority was based upon the failure of the Plaintiff to respond to two phone messages that the Plaintiff's counsel had left on the Plaintiff's answering machine. Plaintiff's counsel was being far too hopeful in his belief, or his assumption as it were, that the Plaintiff's silence in the face of Plaintiff's counsel's phone messages in some way connoted or

---

[1] In addition to an in-person settlement conference held on October 1, 2007, each of the parties consented to *ex parte* communications with me in an effort to facilitate settlement of this matter. As a result, numerous *ex parte* telephone settlement conferences have been held to date.

> indicated the Plaintiff's acquiescence to certain recommendations of settlement made by the Plaintiff's counsel to the Plaintiff. The Plaintiff's counsel, however, immediately repudiated the alleged settlement after he was advised by the Plaintiff himself that the proposed settlement was not acceptable. This repudiation was communicated to the Court without delay. A written agreement was never circulated, the case was never dismissed, and the so-called "settlement" never went beyond the informal telephone conversations referred to above.

See Response (Dkt. No. 51) at 3-4.

According to the Court's notes of February 18, 2009, as well as my personal memory, Mr. Russo informed the Court that while his client was not happy with the sum of $25,000.00, "he was on board" and would accept that sum in full and final settlement. At the hearing in this matter, however, Plaintiff testified that he never gave Mr. Russo authority to settle the case for $25,000.00, and never received any phone messages since he didn't obtain an answering machine until March 2, 2009. This, of course, is directly contrary to the representations made by his attorney to the Court. As indicated above, Mr. Russo said he believed his client would settle the case because he never received a response from Plaintiff to his telephone messages.

## II.   DISCUSSION

The Federal Courts have typically applied Pennsylvania substantive law to issues involving the enforcement of settlement agreement.[2] "An agreement to settle a lawsuit,

---

[2]  As Defendant correctly notes in its memorandum, courts typically apply Pennsylvania substantive law to disputes involving enforcement of settlement agreements because settlement agreements are interpreted according to traditional principles of contract law, and there is no conflicting federal interest. *See, e.g., Nice v. Centennial Sch. Distr.*, No. CIV.A. 99-3262, 2000 WL 714667, at *2 (E.D. Pa. June 1, 2000) (stating that "when federal law does not expressly establish a rule of decision," and "where state law on the issue is well-developed and the application of state law will not impinge upon any federal interest, the court may 'borrow' state law to fill the gap

voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970). The enforceability of such settlement agreements is governed by the principles of contract law, which requires a meeting of the minds. *Mazzella v. Koken*, 739 A.2d 531 (1999).

In this case, Mr. Russo now relates that his earlier representation to the Court, i.e. that his client would settle for $25,000.00, was based upon a misunderstanding of his client's failure to respond to his telephone calls and that he never actually received express authority from Plaintiff prior to making that representation to the Court. While the facts presented on Plaintiff's behalf are troublesome, I must determine whether Plaintiff authorized Mr. Russo to settle the case and then repudiated the settlement or whether Mr. Russo never had such authority. If Plaintiff simply changed his mind, a binding settlement agreement would remain binding. *McCune v. First Judicial District of Pennsylvania Probation Department*, 99 F. Supp 2d 565 (E.D. Pa. 2000).

While it is disturbing that the testimony of Mr. Russo and Plaintiff are in conflict, neither version supports the finding that Mr. Russo had express authority to settle the case. The only evidence in the case which supports a finding of an agreement which was later repudiated, is Mr. Johnston's statement that Mr. Russo's voice mail message informed him that Plaintiff had "repudiated" the settlement. In light of all of the facts presented, that term simply appears to be an inartful way of telling Mr. Johnston that Plaintiff would not agree to the proposed terms of settlement.

---

in the federal statutory scheme"); *Tiernan v. Devoe*, 923 F.2d 1024, 1032-1033 (3d Cir. 1991).

## III.  CONCLUSION

For the reasons set forth above, I must deny Defendant's motion to enforce settlement. An Order consistent with this Memorandum follows.